Good morning everyone. Let's have a seat. Good morning, your honors. Rachel Moran, formerly with the Office of the State Appellate Defender, and now appearing pro bono on behalf of Daniel Guja. Good morning, your honors. Lisa Sterba, Assistant State's Attorney on behalf of the people. Okay. All right. Item for proceed, 15 minutes apiece. Time for rebuttal. Yes, your honor. May I please reserve three minutes for rebuttal? Sure. Yes. Before you start, let me ask you a question. What evidence was excluded here? Your honor, the affirmative defense was excluded. The evidence was not. And that's actually a real problem in this case because the affirmative defense was excluded after the evidence was admitted. And because of that Can I just interrupt for a second? Really, I have to read the record. I just read the briefs that was dumbfounded. The judge did not allow an answer to discovery to be amended. That's all the judge said. You can't amend the answer. Your honor, well, the judge's precise comments are reproduced in full on page 16 of our opening brief. But essentially, that is what he said, is the state objective said it was surprised by this. The judge said, okay, well, that would be an unfair surprise. I'm going to borrow the affirmative defenses. What about the timing issue? I mean, state had already rested, defense had already rested. And then at the end, they want to amend the answer. That is a problem, your honor. And that's why counsel was unquestionably ineffective when he did this. If he was, how is your client prejudiced if all the evidence got in and it's he said, she said? She said it happened one way and he said it happened another way and the judge determines who's telling the truth. How is he prejudiced if every single thing he wanted to get said was said? Your honor, the real reason he's prejudiced is that he admitted to the conduct that comprised the elements of domestic battery and unlawful restraint and he wasn't allowed to argue that it was justified. So it's actually an extraordinary prejudice that it happened after his testimony was made. So where's the unlawful restraint? When he held her down? When he admitted that he took her to the ground and held her down for approximately 60 seconds or more in order to protect himself and her. And his exact words were, he wanted to restrain her from hurting me and herself. That's the restraint element. But he wasn't allowed to argue that he was justified in doing so. And it's actually significantly more of a prejudice than even if his testimony has been excluded. Because if his testimony were excluded, then he at least could argue perhaps reasonable doubt or that the court did already indicate or did indicate that it didn't believe the complainant. So perhaps they could have argued that there was no proof or no credible evidence that these offenses had occurred. Well, one of the affirmative offenses was necessity. And in his testimony, he indicates there was many opportunities where he could have just left. Also, I believe in cross-examination, he could have called 911. So he had other alternatives. So where's the necessity here? Your Honor, necessity occurs when the conduct that actually happens is less harm than what could have happened. So he's engaging in some sort of otherwise unlawful conduct. But it's in order to prevent any greater harm from happening. There's an alternative. He had alternatives here. Well, not necessarily when she actually started throwing glass Bacardi bottles, glass candlesticks, and an ashtray at him, punching him and kicking him. So yes, I would agree with Your Honor that there is an extended period of time that they were together.  Mr. Guia's testimony was that it was over the course of several hours. But the actual physical incident that he's admitting to, that's not a situation where he necessarily could have just gotten up and left, which would be a necessity, which would cause a problem for the necessity defense. The actual conduct, when she's throwing the glass bottles at him, when she's punching and kicking him, there's no indication that he could have just immediately left in that situation. What he did instead was grab her and take her to the ground briefly in order to protect himself and her, he said. And that admission is an admission to the conduct. And after he'd already admitted to that conduct is when the court said, well, I'm not going to allow you to present these affirmative defenses. In other words, I'm not going to allow you to argue that your conduct was legally justified. He just said the way you're saying it, I'm not going to allow you to present these affirmative defenses, or I'm just not going to allow you to amend the answer to this guy. He said, I'm not going to allow you to amend the answer to include the affirmative defenses you're requesting. Well, didn't he indicate that in these type of cases, and he already heard all the evidence, right? Didn't he indicate in these type of cases, sometimes these type of situations, that he said, she said, and that's why he wasn't going to allow the affirmative defense, because he hadn't heard all the evidence that there was? Your Honor, with the judge in the case, and I apologize, I'm not quoting verbatim right now, but it's page 250 and 51 of the record. He indicates that it would be an unfair surprise to the state, and we don't disagree with that to an extent. This is trial counsel's fault for not doing this. How is it a surprise to the state when the guy gets up, an opening statement that says that the female started a fight and became violent with the defendant, and she continued to attempt to strike the defendant while the defendant was restraining her, and that the bruises on her are because he was trying to restrain her? How is that a surprise to the state? Well, thank you for pointing that out, Your Honor. Well, let me just say, it's not a surprise to the state, and there's no error to the defendant because he got it in. That's what I'm saying. He got it in from his opening statement. He testified to it. He completely rested his case, and then just went to formally, what does he say, amend the answer to conform to the facts. To the proofs. To the proofs, right. Your Honor, I would disagree with Your Honor's statement that there was no error because the court indicated that it wasn't going to consider these. I said there's an error. Why is there anything other than harmless error because all the evidence came in? How is he prejudiced is what I'm saying. Your Honor, it doesn't matter if the evidence came in if the court's not willing to consider a legal justification. It's actually worse because the evidence came in in the sense that. You're saying that's what the judge said. I'm not going to consider this defense. Well, Your Honor, the fact that he said you cannot amend the answer to include affirmative defenses, it would be unfair prejudice to the state. It's certainly an indication that he's not willing to consider them. I don't think it's a plausible reading that he's going to say I'm denying you an opportunity to amend the answer. I'm concluding that it's unfair prejudice to the state, and yet I'm still, in my mind, going to consider that. I don't think that's a fair reading. Then why didn't he strike the evidence? Pardon me? Then why didn't he strike the evidence? Nobody asked him to strike the evidence, and the state certainly didn't object to striking the evidence because the state wanted that evidence. It was an admission to the offenses. It was an admission to the only two things Mr. Guyot was convicted of. It's important to take this in context. He was charged with 20 things. He was charged with attempt to murder, aggravated criminal sexual assault, many other offenses, and the court specifically found that it did not believe the complainant's testimony and that it found no credible evidence of several of the offenses to which she testified. Sexual assault offenses. And sexual abuse and burglary, Your Honor. It found it did not believe any of those things. And so the court acquitted Mr. Guyot of all 18 things which he denied committing and only found him guilty on those two things, two offenses that he admitted but which his justifications would have applied. What about the lack of compliance with Supreme Court Rule 413D? That's a problem, Your Honor, and that's why trial counsel is ineffective. And the state admits in its brief at page 21 that trial counsel's conduct was unreasonable. It was a discovery violation, and we don't contest that at all. What could have been trial strategy? The complaining witness was from out of town. She had already left. She testified, right? The only witness the state had was the officer. Put a rebuttal. Well, I'd like to answer that in two ways. The first is, as Justice Lamkin already pointed out, defense counsel got up in opening statement and put forth a justification defense in opening statement. He said that the complainant became violent and that Mr. Guyot held her down and restrained her, quote, to prevent her from hurting Mr. Guyot and herself. So it wasn't trial strategy. He was intending to present this, and he only realized after the fact that he had failed to amend the answer to conform to the proofs. And as to the question of what the state could have done in response, that speaks to whether there were lesser sanctions available in this case. The state, the record does indicate that the complainant had moved out of town. As the state admits, it's not clear whether she was present on that second day of trial. And so one option, if she had been present, would certainly have been to simply present her testimony in rebuttal if the state wanted to do that. Another option, which defense counsel had no objection to, was allowing the state time to present rebuttal evidence, which would have been a continuance in this case. But no one asked for that. Well, defense counsel said that he would have no problem to the state having time to present a rebuttal witness. And so that, I think, is an indication that it was a continuance. The trial had already been continued once, and there are a number of Illinois appellate cases which deal with situations like this, where trial counsel committed an unquestionable error in failing to amend his answer to conform to the evidence, or to provide an answer ahead of time. I apologize. Yeah, I was going to ask, is there a case like this? Because all the cases that you cite are the cases where before the trial began, or in the trial, that there was a request to amend the answer. And these are majority trials. We've got a bench trial one. The state's evidence is completed, and the defense's evidence is completed. And the defendant knows from the beginning of the case that his defense is going to be self-defense and necessity. Is there a case that says this is not a proper sanction under those circumstances? Your Honor, the cases most closely on point are Hauser and Gracie. No, they're not on point, because those cases happen in a jury trial, and they start before the evidence began. I said after all the evidence is completed. You have something after the evidence. Your Honor, I believe people versus, there's one case, I believe it's Foster, but I'd have to go back and look, in which it happened after the state's case in chief. That's the closest. But that actually speaks to the question. The fact that it's a jury trial, a lot of those cases involve jury trials. Those are actually, it would be less reasonable in those cases to order a continuance, because there's a jury waiting to deliver a verdict. Here, those cases are in fact, this is a case in which a continuance would have been more appropriate, because there was no jury waiting. There was no inconvenience to the parties. If the case had already been continued for a month, there's no reason it couldn't have been continued, if necessary, again. And so the fact that trial courts erred when refusing to order a continuance in the jury setting is certainly an indication that it's worse to refuse to order a continuance in the bench trial setting. And as to Your Honor's concern about how late it was, yes, it was very late, and that's why trial counsel's conduct was objectively unreasonable. We are not suggesting that it's okay to wait until a trial is nearly over. Well, if you were counsel, I'm just saying, where is the prejudice to the defendant? I'm not saying that it was an error. I doubt if it was trial strategy, since the guy said, my defense is self-defense, in his opening statement. I'm saying, where is the error to the defendant? Your Honor, I'm just… Your Honor, the judge had two competing accounts, but he did not consider Mr. Guia's account in the context of whether his actions were legally justified. And that's the prejudice. If you look at the question of prejudice as whether there's a reasonable probability that this error could have changed the outcome of the trial, or taken another way, whether it undermines confidence in the outcome of the trial, we don't need to have absolute proof that this would have changed the outcome. But when you have a situation where the court says the complainant's not credible, where the court acquits the defendant on every single thing the complainant testified to, except the two charges that the defendant admitted committing… But getting back to Judge Gordon's question, this is a domestic violence case. It's a he said, she said, right? The court heard all the evidence. So what evidence was precluded from being heard by the trial court? Your Honor, it's a he said, she said, and Mr. Guia was the most credible witness at the trial. The police officer's testimony came in. A lot of testimony was stipulated, too. So what was excluded? And I apologize if there's something in my briefs that has confused the court about exclusion. The evidence was not excluded. The consideration of the affirmative defense is what was excluded. And so Mr. Guia was allowed to testify that he had taken the complainant down, rustled her to the ground, and restrained her. He was allowed to testify that he held her to the ground, quote, not so gently. After he had admitted to this conduct, the state didn't object. The state didn't argue that this was relevant to only do an affirmative defense or something like that. So after he had effectively incriminated himself but for the fact that that conduct was legally justified, the court then said, effectively, I'm not going to consider your legal justifications. So here's self-defense and necessity, right? So where was the evidence with regards to the self-defense? Because even though she was throwing things, she was being provoked by him. He was stating that he was going to attempt to close her after hours place, which caused her to become more enraged. So where is the self-defense? Your Honor, the self-defense, as far as provocation, saying I'm going to close your after hours place is not of a justification for throwing glass bottles, candlesticks, and ashtrays at someone. This is an oral argument, right? Pardon me? This was a verbal argument. It was a verbal argument, yes. Right. Yes. And there's no, both of them agree that they were mutually disagreeing with each other. There's no indication in the record other than some of her testimony, much of which the court rejected, that he was the, that he caused the propagation. So as to self-defense, if you accept Mr. Aguirre's testimony that she was wildly intoxicated, which the evidence does in fact indicate hours later she was still well over the legal alcohol limit, if you accept his testimony that she was the one who began throwing things and began attacking him, then he is justified, legally justified, or at least raises that defense, his testimony, by grabbing her and taking her to the ground. That's a reasonable response in, to her conduct, which was throwing things, punching him, kicking him, spitting on him, breaking glass bottles. So he's not the one who's caused the provocation in that situation. And the question is simply whether his testimony raised the affirmative defenses of self-defense. Certainly his testimony that she was the one provoking him, throwing things at him, that raises the defense of self-defense. And that's what the court should have considered in this case, but refused to do so. All right. Let me ask you this. Your case is based on the fact that you claim that the court was not willing to consider the evidence it heard in its decision-making process. Is that right? Your Honor, I- I mean, it either is right or wrong. No, that's not right, Ben. Okay, then. Tell me what- Your Honor, I think the court did consider the evidence that Mr. Gouya wrestled her to the ground. What he didn't consider is whether that was justified. Okay, so he considered some of the evidence, but not all of it. He considered all the evidence. He didn't consider the legal question of whether that was justified conduct. He considered all the evidence. He didn't consider whether an affirmative defense applied, because trial counsel had notified him ahead of time, as trial counsel was obligated to do. Well, in the closing argument, was counsel for the defendant prohibited in arguing anything? Well, what counsel did after the court said- I think the answer is yes, Your Honor, because what counsel did after the court said, I'm not going to allow you to amend the answer, counsel then changed his argument altogether and said, well, maybe she got the bruises when she was flailing and falling because she was intoxicated. So he had to change his strategy in closing argument based on the court's refusal to consider that defense of self-defense or the defense of necessity. Well, didn't he argue, basically argue self-defense in his closing argument? No, he didn't, Your Honor. He argued in an opening statement, and then he changed tactics in closing argument and said the bruises must have been the result of her own intoxication, flailing and falling to the ground. He actually changed his closing argument after the court said, I'm not going to allow you to amend the answer. And so that did affect-that's another indication that it wasn't trial counsel's strategy ever to fail to amend the answer in this way. And it did affect the way the evidence was argued. It didn't affect the evidence that was admitted, but it affected the way the court was willing to consider whether that conduct was legally justified. And in the defendant's claim of self-defense, did he produce evidence that he was injured? Your Honor, he did not-no, not necessarily, Your Honor. It's not clear whether he was injured or not. The indication-the only indication- Well, it's pretty clear if the record doesn't show that he testified he was injured, he testified everything he wanted to testify to. No, he didn't indicate he was injured, Your Honor. So the defense theory here was that the state wasn't going to be able to meet its burden. And throughout the testimony of the state witnesses, the defense attorney kept on poking holes with regards to some of the statements that the victim had made to the police officers, to the paramedics, so on and so forth, in terms of the injuries and how she sustained the injuries, as well as to her own testimony. So then he puts on the defendant. And in a cross-examination, the state proceeds to cross-examine him as to what happened during the incident. And again, because this is a he-said-she-said. So at that point, and that was their only witness, except for the stipulated testimony, so then the defense counsel realizes that maybe he needs to amend his answer. So again, how is he ineffective? Because originally he didn't think that the state was going to be able to meet their burden. And then at the end, after the defense puts their case on, they might have realized that we better throw in self-defense and necessity as an alternative. Your Honor, I actually don't think that's a fair reading of what happened. What happened is that it's important to separate out the charges. So his defense was reasonable doubt as to a number of the charges. But his defense was never intended to be reasonable doubt as to domestic battery or unlawful restraint. Where's that in the record? Well, what we have is the indication in the opening statement, as Justice Lampkin has already pointed out, that defense counsel specifically, with respect to those charges, he says that the complainant had become violent and that Mr. Guia had responded by holding her down and restraining her in order to prevent her from hurting Mr. Guia or herself. So at that point in time during the trial, he was still being charged with attempt, aggravated sexual assault and a variety of other different charges, burglary as well as domestic, right? Sure, yes. So at that point in time, we don't know what's going to stick and what's not going to stick, right? Of course, Your Honor, but any reasonable conduct in that case would be to include those answers so the state is on notice, so they can be considered depending on how the evidence comes in. And sure, he may not have been tied down to presenting those defenses, but he absolutely had to notify the state and the court ahead of time in order to present those defenses. It's clear that Mr. Guia's testimony wasn't a surprise because it echoed what trial counsel had already said he was going to be presenting as his defense in opening statement when he testified about the altercation and how Mr. Guia held her down in order to protect himself, essentially. And so it's clear this wasn't a surprise testimony. This is something that trial counsel had an obligation to notify the parties of ahead of time. He failed to do so, and because of his failure, the trial court never considered whether the conduct was justified. That's the prejudice in this case, and that's why Mr. Guia's convictions should be vacated in order that he's not in a situation where he's already admitted to the conduct and then told he can't argue that it's justified. So are you saying that the court didn't abuse his discretion? I'm saying the court did abuse its discretion, but this court doesn't even need to reach that issue because it could find simply the trial counsel is ineffective and never have to consider the question of the court's conduct. I'm just trying to frame this for myself when I look at this again. And just thinking about what you're saying and what the defendant said, you're saying he admitted he committed a crime. I'm saying he admitted the conduct. Right, he admitted the conduct. And that the argument was that conduct was legally justified, but when he wasn't allowed to argue and when the court declined to consider whether the conduct was legally justified, then yes, essentially it may as well have been a guilty plea to those two charges. He admitted the conduct and wasn't allowed to argue it was legally justified. Thank you, Your Honors. May it please the Court, my name is Lisa Sterba, Assistant State's Attorney on behalf of the people. Your Honors, the issue in this case revolves around defendant's trial counsel's failure to comply with the discovery requirements set forth in Supreme Court Rule 413 and the sanction that the trial court imposed pursuant to Supreme Court Rule 415. And as Your Honors have already indicated, the timing of what took place in this case, and specifically when it took place, is extremely important. Isn't the sanction here kind of harsh? I mean, the case is still going on, and as counsel pointed out, the state could have asked for a continuance, and there could have been other possible sanctions imposed on the state at that time. Your Honor, the trial was not still in progress. For all intents and purposes, the trial was over. Both the state and the defense had presented their entire case in chief. The state had already had an opportunity to cross-examine the defendant, rested, the case got a one-month date, and at that point the defense presented its case in the form of the defendant's testimony. It was at the conclusion of the defendant's testimony that defense counsel moved to amend his answer. Do you have any case in Illinois where there was a bench trial, and the defendant wanted to amend their answer, and it would be denied? Do you have such a case? All the cases that I saw were jury cases, not bench trials. I mean, a bench trial, you continue to another date. You give the defendant the opportunity. I never heard of it not being done. I think you're better served, the people would be better served, to argue that they heard all the evidence, not that the judge was correct. Your Honor, there is not a case directly on point, but there are numerous cases set forth from this very court, whose decisions are consistent with what the trial court did here. As Your Honors well know, the trial court is presumed to know the law, and therefore we can presume that the trial court considered other less alternatives, other alternative less severe sanctions, and determined in this case that there were none. As counsel indicated, the record is very unclear as to whether the victim was present on the second day of trial. And that goes to the question of prejudice. The argument on the motion to amend, the state indicated that it was being prejudiced. How was the state being prejudiced? We don't know because we don't know what evidence would have been introduced. There was never any argument beyond that that the state was prejudiced, and the trial court said the state is prejudiced. So we never got into the crux of how the state was prejudiced. How was the state prejudiced? The state would have been prejudiced had defense counsel been successful in amending his answer to discovery at that point in time. As I stated, all of the evidence was complete, and the state at that point, when the trial was essentially over, the state wasn't prepared to have the burden shift back and have to disprove these affirmative defenses that defense counsel tried to raise at the last minute here. What evidence was missing? What evidence would the state put on here that would make it any different? That's a good question, Your Honor. And that's a question that the state would have had time to investigate and to explore had it been given notice, proper notice, in accordance with the Supreme Court rules that defense counsel would have raised. What's there to investigate when it's a he said, she said? What is there to investigate? There are no other witnesses. I mean, what are they investigating? The state's always investigating. What are they investigating? Are they investigating the error? So he said, she said. There's nothing to investigate. That's right, Your Honor. And being that all the evidence was in, the trial judge specifically held in his ruling that he considered the credibility of the witnesses, meaning both the victim and the defendant in this case. And contrary to counsel's argument, it wasn't that the trial court accepted completely one witness's testimony and completely rejected the other. It's not, it's certainly not an all or nothing concept here. There were certainly portions of the victim's testimony which were accepted, considering defendant's convictions on both domestic battery and unlawful restraint. And there were certainly portions of the defendant's testimony that were rejected and accepted in light of his acquittal on the most serious felony charges that he was facing. Let's go back to the argument with regards to not allowing the amendment. The court imposed a sanction. But again here, the record's not clear as to how defense counsel's lack of compliance with 413 was willful or bad faith. The court never pursued or asked counsels to pursue any further argument on that issue. So how do we know that defense counsel's conduct was actually bad faith or willful in terms of not complying with the discovery rules? Well, Your Honor, on appeal, defense counsel isn't contested in the fact that there was a discovery violation here. But that's part of what happened here. The court did not allow the amendment of the affirmative defense. And in that regards, what the court ruled, although it's not clear on the record, by not allowing the amendment, is that counsel did not comply with 413. Not allowing counsel to amend his answer comes as part of the sanction. But the discovery violation itself is not contested on appeal. What's contested is the sanction. And as I've stated, there was simply no other appropriate sanction available in this case. A continuance not only would have been, which is the only alternative sanction suggested by counsel in the defendant's briefs. But this is the most, in terms of the defense, this is the harshest sanction you can impose on the defense. And in order to make that determination, for our considerations, how do we know that counsel's lack of compliance with the rules was willful or in bad faith? The defense counsel wasn't prohibited from raising or bringing up any further evidence in this case. The defendant testified without objection by the state. And the trial court specifically stated he considered the witness's credibility, including that of the defendant. There was no other alternative sanction available in this case. The state had presented its entire case. It was entirely too late. The only party that would have been prejudiced had defense counsel been allowed to raise these defenses at the 11th hour. The very end of the case would have been the state. And the trial court acknowledged that in barring defense counsel from raising those defenses at the very last minute. And should this court determine that there was any error, any error was certainly harmless beyond a reasonable doubt. We have overwhelming evidence of the defendant's guilt and truly no evidence of self-defense or necessity in light of the facts of this case. The victim testified in great detail as to the brutal beating that she received from the defendant for hours on end. The victim described being hit, being punched, being dragged by her ankles, being thrown over the defendant's shoulder, and slammed onto a granite countertop. The defendant proceeded to throw a metal table on top of her. We had medical personnel inform of the stipulation as to the injuries the victim sustained. And we also have photographs in the record that illustrate bruising up and down the victim's body. As your honors indicated, there is absolutely no evidence of any injury that the defendant sustained in this case. In fact, when the victim went to call the police initially, the defendant admittedly took her cell phone out of her hand and threw it, so she would be unable to do so. Had the defendant truly been the victim in this case, he would have wanted the police there, but that didn't happen because he was, in fact, the aggressor in this case. In more than the victim's testimony, we also have two specific instances of physical violence between this defendant and this victim. There was proof of other crimes evidence admitted and used at trial, one being a drive-back from Las Vegas in which the defendant punched the victim in the nose, and another which included an argument similar to this that turned physical when the defendant decided to shove the victim. These prior incidents demonstrate a history of violence between this couple, between the defendant and between the victim, and further illustrates the defendant's propensity for violence and physical abuse. The defense counsel indicated that he held her down, and that was sufficient to assert affirmative defense. Your Honor, that certainly wasn't sufficient to raise an affirmative defense. Properly raising an affirmative defense would have been listing that in their answer to begin with. All that counsel did in opening statement was merely dictate what the defendant would testify to, and what he felt the evidence would show. That certainly wasn't enough, and certainly didn't comply with the discovery rules when it comes to properly raising an affirmative defense. That didn't happen here. However, defense counsel's failure to raise these initially did not rise to the level of ineffective assistance of counsel, as counsel claims on appeal. Defendant can't show that his attorney performed incompetently, or that his alleged incompetence was prejudicial in any way. What's worth noting here is that at the motions we directed finding, defendant was actually acquitted of the most serious felony charges that he was facing. So it certainly wasn't unreasonable for a defense counsel to shift gears at that point and try to achieve the same result by attempting to raise these affirmative defenses when he did. It was unsuccessful, but nonetheless didn't prejudice the defendant in any way. For those reasons, and for those studied in our brief, we ask that you affirm the defendant's convictions of domestic battery and unlawful restraint. May it please the Court, I have three points on rebuttal. Before you go into that, tell me, what evidence of self-defense was introduced in this case? Your Honor, the evidence that raised self-defense, that the Court should have considered that justification, is when Mr. Guia himself testified that the complainant, who was highly intoxicated, was throwing, there are three things he described, a glass ashtray, glass Bacardi bottles, and a candlestick. Yeah, but he didn't get hit by any of it, did he? Well, I'm not sure, but the photographs do show that there was broken glass all over the building. The defendant could have left at any time, just walked out of the door, said goodbye. I'm not sure when she was actually physically punching and kicking him that he could have left at that point. And self-defense doesn't require, there's no duty to retreat. And so that's actually, it may have been the wiser thing to do, but that's not a question relevant to whether self-defense was raised. She was punching and kicking him and throwing glass, heavy glass items at him. That raises the defense of self-defense. So you're telling me that there was no duty to retreat, no duty to leave when somebody's throwing something at you. You're supposed to stay there and not leave. Do you have an Illinois case that says that? Your Honor, if Your Honor looks at the statute for justified use of force, I don't have a case, but the statute for justified use of force. I look at the statute and I've read all the cases in Illinois. I keep all of them, every one of them, and I read the cases in all the states. And I haven't found any case that ever said that. So I'd like to see, you made a statement that there's no duty to retreat. I'd like to see a case that says that. Somewhere in America, I don't care what state, show me one. Your Honor, I didn't cite any cases discussing the duty to retreat. Your Honor, as far as to answer your question about whether there is a, whether his testimony raised the justification of justified use of force, justified use of force is appropriate when someone reasonably believes that the conduct is necessary to defend himself against another's unlawful use of force. And at the time that she was throwing things at him, punching and kicking him, his response, it's not as if he took out a gun and shot someone. His response was to hold her down and restrain her. And that raises the defense of self-defense. I'd also like to answer Justice Lampkin's earlier question, which I didn't do a very good job answering, regarding precisely what the Court said when it declined to allow counsel to amend the answer. And this is on page 16 of our brief, but the Court says, when there has been no affirmative defense alleged in the answer, then there would be an unfair surprise to the State in preparing its case to deal with the affirmative defense. The Court then goes on to say, and so the motion to amend the answer is denied. And so that's an indication that the Court was refusing to consider the affirmative defenses because counsel had not included them. Yes, that's the leap I was trying to get at. In trying to frame what your argument, your argument to me is that the defendant admitted that he committed some kind of conduct. That conduct was in response to the victim's aggressive conduct toward him. He is therefore raising the affirmative defense. And his lawyer didn't file that affirmative defense. The Court didn't allow him to amend the answer. But you're also saying when the Court doesn't consider the defense, that's what you're saying. The Court's not considering the defense because the answer wasn't amended to say that. Precisely, Your Honor. And that's the indication we have when trial counsel then changes his tactic to argue that she caused her own injuries, essentially. And how do we deal with that in response to the law that says the Court is presumed to know the law? The Court does know the law, and the law is that counsel should have filed the answer earlier. If the judge is hearing an affirmative defense, if the evidence is there in the affirmative defense, whether he admitted the answer to say that or not, didn't the judge get the evidence? Because that's where my problem is. All of the evidence is there. The judge got the evidence. He just didn't have a formal answer to discovery saying, and our affirmative defense is this. Well, if the judge is saying you can't amend the answer, it would be unfair to include these affirmative defenses, then I don't think it's plausible to also assume that the judge went ahead and considered them anyway, despite saying it would be unfair. There were a lot of replies to the evidence that he heard. I was a trial judge for 22 years. I had plenty of lawyers who, I don't want to say the word, I was trying to think of another word other than screwed up, but I still considered the evidence and the law, whether the lawyers made a mistake in filing their answer or not. Well, I doubt Your Honor ever made a record quite like this one. But I don't think that this justice, when he says you can't include the affirmative defenses in your answer, I won't allow the amendment, it would be unfair to the state, I don't think the judge then, in his mind, without saying so on the record, then went ahead and considered those defenses anyway. That's not really a fair reading of the record. What he did do, and what he believed was appropriate because of trial counsel's ineffectiveness, was decline to consider those defenses. And that's the issue we have here. You know, the arguments that you're giving us are good arguments if the motion had been denied in the beginning or in the middle of the trial, then I could see what you are saying. But the problem is this was done after all the evidence was in. So the only prejudice that could be claimed would be that the defense counsel had to change his closing argument, as you said, to comply with the judge's ruling, and couldn't argue the question of the self-defense justification. Well, Your Honor, this actually addresses the last point I wanted to make on rebuttal, which is that the evidence actually wasn't over. The state asserted repeatedly throughout its argument that the trial was essentially over. The state actually got up and presented rebuttal evidence after this all happened. And so that speaks to Your Honor's question of whether the evidence was actually concluded, but it also speaks to whether there could have been alternative sanctions. The state, the trial wasn't over. The state still had an opportunity to present rebuttal evidence. As Your Honor pointed out, it's not clear what they even could have presented as far as rebutting a he-said-she-said incident where there were only two witnesses. But if it wanted to, it certainly could have called the complaining witness back. Well, actually, I mean, I hate to interrupt you. But the witness that they called, the police officer, helped the defendant. So that's really why I don't see the error here. The defense lawyer gets up, I mean, the detective gets up and says, the defendant said she came at him. And so he had to restrain her. He was saying the same thing that the defendant said. I don't understand how that helped the state either. But the judge didn't consider it. Your Honor, all I can say is that if the judge is refusing to consider affirmative defenses, that doesn't help any more than Mr. Louia's own testimony. That's what you're saying. The result of him not allowing the amendment to the answer means that he didn't consider it. That he didn't consider it himself, even though he didn't allow them, because he didn't allow them to amend the answer. Well, I would simply ask this Court to consider what his statements, what his refusal to allow the amendment could possibly have meant if it didn't mean that he was denying the defendant from raising those affirmative defenses. Thank you, Your Honor. Thank you. I want to thank both counsels on a well-briefed and well-argued matter. And the Court will take this under advisement. Court is adjourned.